IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | 2:17-cr-00157 |
| v. | ) | |
| | ) | Chief Judge Mark R. Hornak |
| | ) | |
| JOSEPH IEZZI, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Mr. Joseph Iezzi's Motion for Compassionate Release in Light of the 2018 First Step Act pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Motion"). On March 19, 2018, this Court sentenced Mr. Iezzi to an aggregate of 120 months of imprisonment, followed by three (3) years of supervised release. (ECF No. 68.) On April 15, 2020, Mr. Iezzi filed a previous Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and Request for Emergency Consideration citing concerns about his health given the COVID-19 pandemic based on his diagnoses of chronic kidney disease, hypertension, and diabetes, *inter alia*, and requesting a reduction of his sentence. (*See* ECF No. 121.) On August 14, 2020, this Court denied that motion, finding, upon consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), that though Mr. Iezzi presented extraordinary and compelling reasons for release, release was not warranted at that time.

Based on the record now before it, the Court concludes that Mr. Iezzi's current Motion is properly before it and that his health conditions do rise to an "extraordinary and compelling" level. However, the Court finds that release is still not warranted. At the present time, though Mr. Iezzi demonstrates an extraordinary and compelling reason for release – primarily his end-stage kidney

1

disease – Mr. Iezzi can and is receiving appropriate medical care at FMC Devens and in light of his previous record while on release and upon consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), release remains unwarranted. Accordingly, the Defendant's Motion is DENIED without prejudice subject to its reassertion should circumstances warrant.

## I.     BACKGROUND

The Court's previous Opinion denying Mr. Iezzi's motion for compassionate release summarized the relevant background of this case; the Court will briefly recount that background here. (*See* ECF No. 146.) In 2017, Mr. Iezzi pleaded guilty in the above-captioned matter to his third federally prosecuted bank robbery.[1] On these charges, he was sentenced to an aggregate of 120 months in custody, followed by three (3) years of supervised release. (ECF No. 68.) As of the date of this Opinion, Mr. Iezzi has served about fifty-five (55) months of actual incarceration, and the Bureau of Prison's ("BOP") lists Mr. Iezzi's release date as October 20, 2025. Bureau of Prisons Inmate Locator, *Federal Bureau of Prisons*, https://www.bop.gov/inmateloc/ (last accessed December 9, 2021).

At the time of sentencing, the Court was aware of Mr. Iezzi's significant health conditions, including chronic kidney disease, diabetes, gout, hypertension, elevated cholesterol, and acid reflux. (ECF No. 54, at 15.) In addition, Mr. Iezzi's medical provider noted that Mr. Iezzi's "various chronic conditions put him at a slightly elevated risk of heart disease." (*Id.*)

The state of Mr. Iezzi's chronic kidney disease has advanced since the Court sentenced Mr. Iezzi and since the Court considered Mr. Iezzi's previous motion for compassionate release. In November 2017, when the Court sentenced Mr. Iezzi, his kidney function was "nearing Stage V" and his medical provider stated that Mr. Iezzi would need to begin dialysis once reaching end-

---

[1] Mr. Iezzi pleaded guilty to his first bank robbery on November 25, 2002, in criminal case No. 02-cr-00198. He pleaded guilty to his second bank robbery on August 23, 2005, in criminal case No. 04-cr-312.

stage, which would likely occur within ten (10) years. (ECF No. 54, at 15.) By December 2019, Mr. Iezzi's kidney disease remained classified as severe stage IV and his medical provider advised him that he would likely reach end-stage and need dialysis by the Summer of 2020. (ECF No. 121-6, at 2–3.) When the Court considered Mr. Iezzi's previous motion for compassionate release in the Summer of 2020, Mr. Iezzi's condition was still classified as severe stage IV kidney disease, but it had not yet reached the level of terminal or end-stage. (ECF No. 145, at 12–16.) Mr. Iezzi now asserts that his kidney disease has reached end-stage and that he has begun hemodialysis. (ECF No. 167, at 5.)[2]

Mr. Iezzi brought his present Motion, *pro se*, in July 2021, asserting that his end-stage kidney disease, *inter alia*, constitutes an extraordinary and compelling circumstance justifying his release. (ECF No. 167.) The Government contested Mr. Iezzi's release in its response. (ECF No. 175.) This Court conferred with counsel and ordered Mr. Iezzi's counsel to file supplemental briefing. (ECF No. 182.) Defendant's counsel filed a supplemental response in support of Mr. Iezzi's Motion on October 19, 2021. (ECF No. 183.) This matter is now ripe for disposition.

## II.   LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. As amended, that provision allows a court to modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). In addition, the court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors

---

[2] Medical records from the BOP document that he was diagnosed with end-stage renal disease on May 5, 2021. (ECF No. 176.)

set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. § 3582(c)(1)(A).

### III.   DISCUSSION

#### A.   Administrative Exhaustion

To consider the merits of Mr. Iezzi's Motion, the Court must first determine whether Mr. Iezzi has complied with § 3582(c)(1)(A)'s exhaustion requirement. Prior to petitioning a court for relief under § 3582(c), a defendant must first file an administrative request for compassionate release with the warden of his facility and then either: (1) fully exhaust the administrative remedies within the BOP; or (2) wait thirty (30) days from the date his administrative request was filed with the warden. The Third Circuit has confirmed that either of § 3582(c)(1)(A)'s options (acting independently of one another) are sufficient to satisfy the exhaustion requirement. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (rejecting the argument that a defendant is required to completely exhaust the administrative remedy process if the warden denies a request within thirty (30) days of receiving it, primarily because "the statute states that the defendant may file the motion [before a district court] thirty days after the warden receives his request.")

Here, the Government contests the Court's authority to adjudicate Mr. Iezzi's Motion based on lack of exhaustion. Mr. Iezzi avers that he has exhausted his administrative remedies because on or about May 30, 2021, he sent a Request to Staff Form to Warden Amy Boncher requesting that the Warden grant him compassionate release and at least 30 days passed without a response before he filed his Motion with the Court. (ECF No. 167, at 5.) Mr. Iezzi attached a copy of this May 30, 2021 request as an exhibit to his Motion. (ECF No. 167-1.)

The Government acknowledges that Mr. Iezzi filed a request for release with the Warden on February 2, 2021 which was based on "circumstances that [Mr. Iezzi] reported were 'terminal'" and argued that Mr. Iezzi suffered "from Stage IV kidney disease, diabetes, high blood pressure, and 'post-Covid issues'." (ECF No. 175, at 4.) This request was denied by the Warden after consideration of Mr. Iezzi's medical records which demonstrated that Mr. Iezzi did not have a terminal medical condition. (*Id.*) However, the Government then asserts that it conferred with BOP legal counsel who reported that the Warden never receive any request for release dated on or about May 30, 2021. (ECF No. 175, at 6–7.) Accordingly, the Government argues that Mr. Iezzi has failed to exhaust his administrative remedies with respect to claims raised in that request and his present Motion. (*Id.*)

Mr. Iezzi's counseled response disputes the government's position, stating that the requirement that BOP have the "first crack" at resolving a defendant's request has been met, even if the Warden did not receive Mr. Iezzi's May 30, 2021 request, since the Warden did receive the February 2, 2021 request, which included the same claims – namely being medically terminal – that are raised in his present Motion. (ECF No. 183, at 3.) Mr. Iezzi also argues that the Warden had access to Mr. Iezzi's medical records, and therefore, the BOP had sufficient notice of the concerns detailed in his Motion. (*Id.*) The Government concedes that Mr. Iezzi has fully exhausted his administrative remedies with respect to the claims raised in his February 2, 2021 request. (ECF No. 175, at 11.)

The Court agrees with Mr. Iezzi. First, the Court notes that, based on the exhibit Mr. Iezzi attached to his Motion indicating that he submitted a request to the Warden on May 30, 2021, it is possible that Mr. Iezzi indeed filed a request after his February request and waited 30 days after that subsequent request before filing his present Motion before the Court, even if the BOP did not

receive it for some reason. However, regardless of the dispute as to whether or not the BOP received Mr. Iezzi's May 30, 2021 request, the Court finds that Mr. Iezzi has satisfied § 3582(c)(1)(A)'s exhaustion requirement with respect to all of his claims by filing his February 2, 2021 request for release based on the "thirty-day option" because the BOP has had more than thirty (30) days to consider all of the claims he is now attempting to bring before this Court.

Mr. Iezzi submitted an administrative request for release on January 29, 2021, which was received by the Warden on February 2, 2021. (ECF No.175-2; 175-3). On February 22, 2021, Warden Boncher denied Mr. Iezzi's request. (ECF No. 175-3.) In denying the request, the Warden stated that "it has been determined that you do not have a terminal medical condition with a life expectancy of 18 months or less, nor do you have end-of-life indicators that would establish a prognosis of terminal." (ECF No. 179, at 7.) Thus, the Court finds that as of February 22, 2021, the BOP was aware of Mr. Iezzi's request for compassionate release, based on the same or substantially similar medical concerns he now raises, more than 30 days have passed since then, and the BOP has had the first chance to consider whether release was appropriate. Though Mr. Iezzi's medical condition was not terminal when he submitted his February 2021 request, the Warden was aware of Mr. Iezzi's deteriorating condition and that it was expected that he would eventually reach the terminal stage. Further, in his February 2, 2021 request Mr. Iezzi specifically stated that he was medically "terminal." (ECF No. 175-2.) Thus, the circumstances for release presented in that request are the same circumstances for release presented in the current Motion before the Court, which satisfies the requirement that BOP have the first chance to consider Mr. Iezzi's request for release. *See Harris*, 973 F.3d at 171.

While the Court acknowledges the Government's contention that Warden Boncher and the BOP staff did not receive Mr. Iezzi's request from May 30, 2021, the Court is satisfied that the

BOP was on notice of the claims Mr. Iezzi raised in that request – namely that his medical condition had deteriorated to a terminal level, that he was immunocompromised, and that the COVID-19 "Delta variant" was present in the community – and was allowed at least 30 days to respond. *See United States v. Raia*, 954 F.3d 594, 597 (2021) (holding that defendants must "at least *ask* the Bureau of Prisons (BOP)" to make a request for compassionate release and "give BOP thirty days to respond.") (emphasis added); *United States v. Smith*, 464 F. Supp. 3d 1009, 1017–18 (N.D. Iowa 2020) ("Asking [the defendant] to restart his [compassionate release] process because of the COVID-19 pandemic would be tantamount to telling inmates that they must restart the process each time their condition deteriorates. That, clearly, is not the purpose of the statute.").

Here, the Court will not direct Mr. Iezzi to restart the process yet again simply because his condition, unsurprisingly, deteriorated between February 2021 and July 2021 when filed his present Motion, particularly in light of the fact that his February request was predicated on being medically terminal. The BOP was certainly on notice of the worsening progression of Mr. Iezzi's kidney disease. (*See* ECF No. 175) (stating that BOP counsel obtained medical records showing that Mr. Iezzi had Stage V kidney disease and began hemodialysis on April 10, 2021). Further, the BOP was clearly aware of the Delta variant and the risks it posed to inmates, especially those that are significantly immunocompromised. (*See id.*) (explaining that BOP was acutely aware of the pandemic and implemented "an Action Plan consisting of preventive and mitigation measures.") Thus, nothing presented in Mr. Iezzi's May 30, 2021 request to the Warden and Mr. Iezzi's present Motion would have come as a surprise to the BOP.

In sum, the record in Mr. Iezzi's case demonstrates that all exhaustion-related goals have been accomplished, and that the exhaustion requirement has been met. The Third Circuit has suggested that the fundamental premise of § 3582(c)(1)(A)'s exhaustion requirement is to give the

BOP the first opportunity to consider whether release is appropriate. *See Raia*, 954 F.3d at 597. In Mr. Iezzi's case, the record before the Court plainly demonstrates that the BOP has had the first opportunity to consider his medical condition generally, including his end-stage diagnosis and commencement of dialysis, in the context of the COVID-19 pandemic. Mr. Iezzi has, for the reasons noted, exhausted his BOP administrative obligations. The Court will proceed accordingly.

### B.  **"Extraordinary and Compelling" Reasons**

The Court must next determine whether Mr. Iezzi's end-stage renal disease, rises to an "extraordinary and compelling" level, such that consideration of release from prison would be permitted by § 3582(c)(1)(A)(i).

Section 3582 does not define the phrase "extraordinary and compelling reasons." Instead, Congress delegated that task to the Sentencing Commission. *See* 28 U.S.C. § 994(t) (stating that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.") The Sentencing Commission defined "extraordinary and compelling" as it related to the BOP's discretion under the pre-First Step Act version of § 3582(c)(1)(A)(i) in a policy statement contained in § 1B1.13 of the U.S. Sentencing Guidelines Manual (the "Guidelines"), but the Commission has not updated the policy statement since the First Step Act became law. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. Apr. 1, 2020).

In *United States v. Andrews*, the Third Circuit explained that, given the lack of an updated applicable Policy Statement defining "extraordinary and compelling," "the existing policy statement is not applicable—and not binding—for courts considering prisoner-initiated motions" for compassionate release—adopting the position that all but one other Courts of Appeals to address the issue have taken. 12 F.4th 255, 259 (3d Cir. 2021). However, "although the policy

statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons." *Id.* at 260. This is because "Congress legislates against the backdrop of existing law," and thus, by "reenact[ing] the compassionate-release statute without any alterations to the phrase 'extraordinary and compelling reasons,'" Congress likely intended the phrase to retain the meaning that the Sentencing Commission gave it in its pre-First Step Act Policy Statement. *Id.* Thus, in reviewing this Motion, this Court does not use the provisions of U.S.S.G. § 1B1.13 and its Application Notes as "an ultimate binding authority" but uses it as a guide in its analysis.

The Application Notes to § 1B1.13 of the Guidelines speak to conditions which would support compassionate release in the form of two (2) different categories of medical conditions that can rise to an "extraordinary and compelling" level: (1) terminal illnesses; and (2) non-terminal conditions that substantially diminish the ability of the defendant to provide self-care within the correctional environment. In deciding Mr. Iezzi's previous motion, this Court held that he did not satisfy the first terminal illness option, but he did demonstrate "extraordinary and compelling" reasons for release under the second non-terminal option. (ECF No. 145, at 13–16.) Now, the Court finds that Mr. Iezzi satisfies the terminal illness option.

The Application Note states that a defendant suffers from a "terminal illness" if they have a "serious and advanced illness . . . [with] an end of life trajectory" and provides the following examples of terminal illnesses: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), **end-stage organ disease**, and advanced dementia." § 1B1.13, cmt. n.(1)(A)(i) (emphasis added). As previously noted, many courts have found that end-stage kidney failure rises to the "extraordinary and compelling" level because it falls into the category of "end-stage organ disease" which is enumerated in the Application Note. ((*See* ECF No. 145, at 13) (citing cases)).

Mr. Iezzi argues that there are a variety of extraordinary and compelling reasons which warrant release, including his diagnosis of end-stage kidney disease and the start of his hemodialysis. He also argues that other extraordinary and compelling reasons for release include (1) an increased risk of reinfection from COVID-19, particularly in light of his immunocompromised status, the more contagious Delta variant and the low vaccination rates among staff at FMC Devens, (2) the harshness of his sentence in light of the pandemic, (3) his contraction of COVID-19, which he argues he would not have contracted if the FMC Devens staff "had not acted with deliberate indifference," and the life-long medical complications associated with this contraction, including burning in the lungs, chest pains, headaches, fatigue and nasal polyps, which cause difficulty breathing and vomiting. (ECF No. 167, at 6–10.) Mr. Iezzi also argues that another extraordinary and compelling reason for release is the lack of adequate medical treatment for his kidney disease and the lack of access to the community, exercise, and psychological care, which he states amounts to an Eighth Amendment violation. (*Id.* at 11–15.)

Mr. Iezzi's non-end stage related complaints do not independently establish extraordinary and compelling reasons for release though they may amp up his extraordinary and compelling reason for release when viewed in conjunction with his end-stage kidney diagnosis. Mr. Iezzi's more generalized concerns about the COVID-19 pandemic are not, in and of themselves, extraordinary or compelling. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Hatcher*, No. 18 CR. 454-10 (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) ("The Court has previously found that harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently 'extraordinary and compelling' to warrant compassionate release.") The

risk of reinfection similarly is not alone an extraordinary and compelling reason for release, particularly in light of the fact that Mr. Iezzi is not only vaccinated, but he also previously had COVID-19 making his risk of reinfection lower, despite his immunocompromised status. (ECF No. 167, at 7); *see United States v. Singh*, 525 F. Supp. 3d 543, 547 (M.D. Pa. 2021) ("[T]he Court concludes that [Defendant's] recent vaccination mitigates his risk from COVID-19 to such an extent that COVID-19, in combination with [Defendant's] underlying conditions, no longer presents an extraordinary and compelling reason to grant compassionate release."); *United States v. Carter*, No. CR 15-228-1, 2021 WL 427110, at *1 (E.D. Pa. Feb. 8, 2021) ("The available scientific evidence suggests that there is a protective development of antibodies among recovered COVID patients, lowering future risk."); *United States v. Ballenger*, No. CR16-5535 BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) (considering a defendant suffering from an autoimmune disease and finding "[a]t this time, because [Defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.")

However, it is undisputed that Mr. Iezzi's kidney diagnosis has reached end-stage and that he is on hemodialysis. (ECF Nos. 167; 175; 176; 183.) While the Guidelines are not binding, the Court is satisfied that Mr. Iezzi's end-stage kidney diagnosis is "extraordinary and compelling" since it qualifies as a terminal illness under the Application Note. Thus, Mr. Iezzi has established an "extraordinary and compelling" reason for compassionate release based upon his end-stage kidney disease diagnosis alone. His additional reasons for release, particularly the long-term complications from his COVID-19 diagnosis and his alleged lack of medical access, may make his end-stage diagnosis more extraordinary and compelling by increasing the severity and harshness of his diagnosis and confinement.

However, the analysis does not end here. The Court must next consider the § 3553(a) factors.

### C.  **The § 3553(a) Factors**

Though the Court finds that there is an "extraordinary and compelling" reason sufficient to authorize Mr. Iezzi's release, it must also consider whether release is appropriate in light of the factors set forth in § 3553(a). Specifically, "in considering the section 3553(a) factors, [the Court] should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Bess*, 455 F. Supp. 3d 53, 66 (W.D.N.Y. Apr. 22, 2020) (citation omitted).

The determination of "whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the [district court]." *United States v. Jones*, No. 12-000038, 2020 WL 3871084, at *4 (W.D. Pa. July 8, 2020) (citing *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. June 26, 2020)). That discretion includes the district court's authority to consider the length of the defendant's original custodial sentence, including the portions served and remaining, when weighing the § 3553(a) factors. *Pawlowski*, 967 F.3d at 330–31.

Here, as before, these factors counter-balance Mr. Iezzi's extraordinary and compelling reason for release. This Court previously held that two factors weighed against release: (1), the nature and circumstances of the offense and the history and characteristics of the defendant; and (2), the need for the sentence imposed to deter future criminal conduct and to protect the public from further crimes by the defendant. (ECF No. 145, at 17.) This outcome has not changed in the eyes of the Court. Though Mr. Iezzi's multi-day dialysis may reduce his ability to reoffend by

limiting his ability to move about the community, the nature and history of his offenses still "instills very little confidence in the Court that he will refrain from committing future offenses." (*Id.* at 18.) Particularly concerning for the Court is the fact that Mr. Iezzi committed the bank robbery for which he is presently serving time while suffering from severe stage IV chronic kidney disease along with the fact that this offense was Mr. Iezzi's third bank robbery. (ECF No. 54.) Additionally, and notably, Mr. Iezzi has served less than half of his 120-month sentence, and as the government persuasively highlights, release or a reduction in sentence at this point would not reflect the seriousness of the offense. (ECF No. 175, at 29); *see also*, *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) ("Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.")

The Court was aware of Mr. Iezzi's overall medical conditions when it imposed its original sentence, and it found that the sentence was appropriate, despite his ailing health. More significantly, the Court was aware that Mr. Iezzi's condition was likely to reach end-stage and that he would likely require "life-sustaining dialysis" during the period of his incarceration. (*See* ECF No. 54; ECF No. 60, at 3.) The Court nonetheless imposed the 120-month sentence. Though it was unforeseen that the COVID-19 pandemic would elevate the potential severity of Mr. Iezzi's end-stage diagnosis, the Court believes its original sentence is still sufficient but also not greater than necessary to accomplish the goals of sentencing.[3]

---

[3] As noted above, Mr. Iezzi is vaccinated and has already contracted COVID-19. Although an immunocompromised person like Mr. Iezzi may be more likely to contract a severe case of COVID-19, even when vaccinated, with the wide availability of booster shots and additional doses, the Court is satisfied that Mr. Iezzi's heightened risk from Covid-19 is significantly diminished. *See, e.g.*, Science Brief: COVID-19 Vaccines and Vaccination

Further, the need for the sentence imposed to provide the defendant with needed medical care outside of the BOP in the most effective manner does not weigh in favor of release. Mr. Iezzi is currently receiving medical care at FMC Devens, a BOP facility equipped to handle serious medical conditions like his end-stage kidney diagnosis and to administer hemodialysis,[4] and Mr. Iezzi has started the process of getting placed on a kidney transplant list.[5] (*See* ECF No. 167-6.) Mr. Iezzi argues that there is no guarantee he will receive a transplant while at the BOP facility, but if he were released "he could receive a Kidney Transplant in a relatively short time or be put on a transplant list in . . . Pittsburgh where he will ultimately receive his transplant." (ECF No. 167, at 12.) However, if Mr. Iezzi were released, presumably a variety of medical steps would need to be taken before he was even placed on the kidney transplantation waiting list in Pittsburgh. *See e.g.*, UPMC Kidney and Pancreas Transplant Surgery: Preparation and Procedure https://www.upmc.com/services/transplant/kidney-pancreas/process (detailing that the kidney transplant process includes finding a doctor, getting referred for a transplant, doing a preliminary clinical review, receiving financial authorization, and getting approved after an evaluation before joining the wait list.) Currently, Mr. Iezzi is already at the step of joining the waiting list, having

---

https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html ("Emerging data suggest an additional COVID-19 vaccine dose in immunocompromised people, typically administered at least 28 days after completion of the primary series, increases antibody response."); COVID-19 Vaccine Booster Shots, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/booster-shot.html (stating that all people above 18 who received a Moderna vaccine are now eligible for a booster).

[4] Mr. Iezzi was transferred to FMC Devens specifically so that he could have access to dialysis and better care for his kidney disease. (*See* ECF No. 145.)

[5] The Government states that once an inmate begins dialysis, they are permitted to complete the form to request a kidney transplant and be "placed on the BOP's transplant list." (ECF No. 175, at 5–6.) Mr. Iezzi has completed that form. (*Id.*)

been observed by the medical staff at FMC Devens since he was first diagnosed with end-stage kidney disease and was put on hemodialysis treatment.[6]

Since Mr. Iezzi's statements that he would receive better medical care outside of the BOP are rather uncertain at best, the factor that requires consideration of the most effective manner of addressing Mr. Iezzi's medical care does not tip the scales in favor of release. At most, it is neutral with respect to determining whether release is appropriate. However, when considered in conjunction with satisfying the other sentencing goals of reflecting the seriousness of the offense, affording adequate deterrence, and protecting the public, the record demonstrates that Mr. Iezzi's correctional and medical needs are being met in the course of his detention and continued treatment at FMC Devens.

The Court is not unsympathetic to the severity of Mr. Iezzi's end-stage diagnosis or his other severe medical issues, nor is the Court unsympathetic to the threat that the COVID-19 pandemic still poses to many inmates, as well as the society at large. However, the facts that Mr. Iezzi has not served even half of his sentence for a very serious crime, that he has a history of reoffending particularly while suffering from essentially the same serious disease, and that he is currently being provided adequate and consistent care for his end-stage kidney diagnosis[7] and has been placed or has started the process for being placed on the BOP transplant list, taken together, do not counsel in favor of early release. Thus, the Court finds that the "extraordinary and

---

[6] It is unclear to the Court whether the BOP transplant list is the same list that Mr. Iezzi would be placed on if he were released. But this lack of clarity demonstrates the speculative nature of Mr. Iezzi's claim that he would receive faster access to a transplant if he were released.

[7] Though Mr. Iezzi complains about the adequacy of care he is receiving, a review of his medical records, which consistently note that his appearance and affect are well, alert, and oriented, indicate that he has had significant and consistent access to needed medical services and that his various health conditions appear well controlled. (ECF No. 176.) And while the receipt of adequate (or better) medical care via the BOP is not a basis to impose or continue incarceration, the level of care that Mr. Iezzi is receiving also is not in the Court's judgment the basis to terminate the custodial portion of his sentence at this time.

compelling" nature of Mr. Iezzi's diagnosis, even in the context of the COVID-19 pandemic, is outweighed by the § 3553(a) factors such that release would not be appropriate at this time.

IV.     **CONCLUSION**

The Court has considered the relevant factors set forth in § 3582(c), as well as the applicable policy statements issued by the Sentencing Commission and the factors set forth in § 3553(a). The Court finds and concludes that Mr. Iezzi's Motion is properly before it and that his recent end-stage renal diagnosis rises to an "extraordinary and compelling" level, both on its own and in light of the COVID-19 pandemic. The Court ultimately concludes, however, that to reduce Mr. Iezzi's sentence now would undermine the original goals of sentencing in this case such that a sentence modification at this time would be inappropriate. Accordingly, Mr. Iezzi's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 167) is hereby DENIED without prejudice to its reassertion should relevant circumstances change.

An appropriate Order will issue.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated:  December 9, 2021
cc:      All counsel of record